IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPHINE CECILIO REYES,<br>Plaintiff,<br><br>v.<br><br>WHG PAYROLL INC., also known as<br>"WURZAK HOTEL GROUP," and<br>trading as "ELEMENT BY MARRIOTT<br>AT KING OF PRUSSIA,"<br>Defendants. | CIVIL ACTION<br><br><br><br>NO.  22-3828 |

**MEMORANDUM**

Plaintiff Josephine Cecilio Reyes ("Plaintiff") brings this employment action against Defendant WFH Payroll Inc., a/k/a Wurzak Hotel Group, t/a Element by Marriott at King of Prussia ("Defendant"), alleging claims of disability discrimination, retaliation, and denial of reasonable accommodation under the Americans with Disabilities Act ("ADA"). Defendant has moved for summary judgment to dismiss the claims against it (ECF No. 21). For the reasons that follow, the Motion is granted in part and denied in part.

**I.      Background**

From July 10, 2021 until March 28, 2022, Plaintiff worked as an assistant housekeeping manager at Defendant's Element Valley Forge Hotel ("Element"). (ECF No. 21-3 at 13, 43). Plaintiff's job duties included supervising the housekeeping staff, developing plans and actions to assist the housekeeping staff in fulfilling assignments, preparing daily closing reports of housekeeping's accomplishments, performing regular inspections of hotel rooms and common areas, and communicating with management to adequately plan for housekeeping services. (*Id.* at 45). Throughout her employment, Plaintiff reported to Vivian Budding ("Budding"), Defendant's former director of housekeeping. (ECF No. 21-4 at 22).

On January 23, 2022, Plaintiff informed Budding that she tested positive for COVID-19. (ECF No. 21-3 at 61-62). Plaintiff remained out of work until she tested negative for COVID-19 and returned to work on February 4. (*Id.* at 65). She reported to work as normal from February 4 through February 7, but on February 8, Plaintiff experienced flank pain and went to the hospital. (*Id.* at 64-65). There, she was diagnosed with pyelonephritis — an "infection of the kidneys" that can be treated and cleared through proper medication and treatment — and informed Budding of her diagnosis. (*Id.* at 66-67, 100). After receiving a course of antibiotics as well as pain medication, Plaintiff was discharged from the hospital on February 11, at which point her symptoms had subsided and her pyelonephritis had improved. (*Id.* at 66-67).

When Plaintiff returned to work on February 16, she provided Gabriel Guzman ("Guzman"), Defendant's former director of talent and culture, with paperwork regarding an upcoming surgery she had scheduled for March 17; however, Plaintiff ultimately postponed her procedure. (*Id.* at 68-69, 71, 86-87). Plaintiff also informed Budding that, while she could work, she would need to stay hydrated, take medications, attend doctor's appointments, and work light duty. (*Id.* at 69-70). Budding told Plaintiff that Defendant would accommodate all of her requests and "give [her] whatever [she] need[ed]." (*Id.* at 70).

On February 25, after receiving reports from several of Plaintiff's colleagues that they had issues with her leadership and performance, Guzman and Budding issued Plaintiff an expectations memo and a performance improvement plan (PIP) — which was put in place for a thirty-day period. (ECF No. 21-4 at 21, 23-25, 38). At the conclusion of the thirty-days, Defendant's corporate Human Resources personnel determined that Plaintiff had failed to meet the required objectives of the PIP and, in turn, decided to terminate her employment. (*Id.* at 28-

29). Accordingly, when Plaintiff reported to work on March 28, she was terminated. (*Id.* at 39-40).

## II.     Legal Standard

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020). A fact is material if "it might affect the outcome of the suit under governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment must "identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must then "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. Of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

In applying this standard, the court must construe the evidence in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 261 n.2. At the summary judgment stage, the court's role is not to weigh the evidence and determine the ultimate truth of the allegations. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (quoting *Anderson*, 477 U.S.

at 249). Instead, the court's task is to determine whether there remains a genuine issue of fact for trial. *Id.*

### III. Discussion

The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 305 (3d Cir. 1999). Here, Plaintiff asserts three claims under the ADA: (1) disability discrimination (Count I), (2) retaliation (Count II), and denial of reasonable accommodation (Count III). (ECF No. 6 at 6-9). Plaintiff also seeks "monetary damages exceeding $150,000.00, compensatory damages, punitive damages, reasonable attorneys' fees, reasonable expert witness fees, interest, costs, and any other relief which the Court deems appropriate." (*Id.* at 7-9).

#### A. Disability Discrimination

Disability discrimination claims under the ADA are governed by the *McDonnell Douglas* burden-shifting framework. *See Law v. Garden State Tanning*, 159 F. Supp. 2d 787, 791 (E.D. Pa. 2001) (holding that the *McDonnell Douglas analysis* applies to employment discrimination claims under the ADA). Under this framework, the plaintiff must first establish a prima facie case of discrimination. *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 880 (3d Cir. 2011). "The burden of establishing a prime facie case of disparate treatment is not onerous." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981). "The goal at this stage is to 'eliminate . . . the most common nondiscriminatory reasons' for the defendant's actions; by doing so, the prima facie case creates an inference that the defendant's actions were discriminatory." *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 271 (3d Cir. 2010) (quoting *Burdine*, 450 U.S. at 254).

To demonstrate a prima facie case of disability discrimination, the plaintiff must show that "(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise

4

qualified to perform the essential functions of the job, with or without reasonable accommodations . . . and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination." *Gardner v. SEPTA*, 824 F. App'x 100, 105-06 (3d Cir. 2020) (quoting *Taylor*, 184 F.3d at 306). If the plaintiff makes out a prima facie case of discrimination, the burden shifts to the defendant to "present a legitimate, non-discriminatory reason for the negative employment decision." *Law*, 159 F. Supp. 2d at 791. To overcome summary judgment, "the plaintiff must then show that the reason presented by the defendant is pretextual." *Id.*

### 1. Prima Facie Case

Although there seems to be no disagreement that Plaintiff meets the second element, Defendant disputes the first and third elements. Specifically, Defendant argues that Plaintiff fails to satisfy the first element because she cannot establish that she had a qualifying disability under the ADA and fails to satisfy the third element because she cannot establish that she suffered an adverse employment action due to her alleged disability. (ECF No. 21-1 at 9, 15). The Court finds that Plaintiff meets both elements.

Regarding the first element, plaintiffs have a disability within the meaning of the ADA if they: (1) have "a physical or mental impairment that substantially limits one or more" of their "major life activities"; (2) have "a record of such an impairment"; or (3) are "regarded as having such an impairment." 42 U.S.C. § 12102(1). By way of background, in enacting the ADA Amendments Act of 2008 ("ADAAA"), Congress rejected the Supreme Court's standard in *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198, which was that an impairment must "prevent [] or severely restrict [] the individual from doing activities that are of central importance to most people's daily lives" and be "permanent or long term" to qualify as a disability. In response to the ADAAA, the EEOC explained that even an impairment that is

expected to last less than six months can constitute an actual disability "if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).

Defendant argues that Plaintiff's pyelonephritis did not substantially limit one or more of her major life activities based on the following: (1) Plaintiff testified that pyelonephritis can be cleared through proper medication and treatment; (2) Plaintiff received treatment for her pyelonephritis in the hospital from February 8, 2022 to February 11, 2022, and by her own admission, her kidney infection had improved and her symptoms had subsided when she was discharged from the hospital; and (3) Plaintiff visited her doctor on March 9, 2022 — approximately one month after her pyelonephritis diagnosis and three weeks prior to her termination — at which time her pyelonephritis symptoms had improved and she no longer complained of any significant pain. (ECF No. 21-1 at 10-11). Accordingly, citing *Macfarlan v. Ivy Hill SNF, LLC*, 676 F.3d 266, 274 (3d Cir. 2012) as support, Defendant argues that Plaintiff's pyelonephritis was nothing more than a "temporary non-chronic impairment of short duration," which "is not a disability covered by the ADA."

As the Third Circuit held in *Morgan v. Allison Crane & Rigging LLC*, 114 F.4th 214, 222 (3d Cir. 2024), because *Macfarlan* applied the pre-ADAAA standard, its holding regarding temporary impairments "is simply not applicable here." Rather, the analysis of Plaintiff's flank pain must focus on whether her impairment "substantially limit[ed]" her ability "to perform a major life activity as compared to most people in the general population." 42 U.S.C. § 12102(1)(A); 29 C.F.R. § 1630.2(j)(1)(ii). On this record, Plaintiff's allegations of pain establish such a limitation.

Plaintiff testified that that her pyelonephritis negatively affected her ability to bend, walk, take the stairs, and "move a lot" in general. (ECF No. 21-3 at 71-72). Plaintiff's prima facie showing for the first element requires no more. Given that walking, standing, bending, working, and performing manual tasks constitute major life activities, *see* 29 C.F.R. § 1630.2(i)(1)(i), a reasonable jury could find that Plaintiff's flank pain, though temporary, nonetheless constituted an actual disability because it substantially limited her ability to perform life activities "as compared to most people in the general population." *Id.* § 1630.2(j)(1)(ii). *See id.* § 1630.2(j)(1)(i), (iii) (substantial limitation question "should not demand extensive analysis" because the term "substantially limits" should be "construed broadly in favor of expansive coverage").

Regarding the third element of Plaintiff's prima facie case, she "must provide evidence that supports a logical inference of causation between the alleged disability and the adverse employment action." *Mengel v. Reading Eagle Co.*, 2013 U.S. Dist. LEXIS 45300 at *4 (E.D. Pa. Mar. 29, 2013) (citing *Yeskey v. Pennsylvania Department of Corrections*, 118 F.3d 168 (3d Cir. 1997)) (other citations omitted). "The sole inquiry is whether [the plaintiff] was terminated *because of [her] disability*." *Campo v. Mid-Atl. Packaging Specialties, LLC*, 564 F. Supp. 3d 362, 380 (E.D. Pa. 2021).

Plaintiff testified that her pyelonephritis prevented her from performing the objective of her PIP that instructed her to "develop plans and actions to assist the housekeepers in a more efficient performance" because this objective required her to bend, walk around, take the stairs, and "stand higher places to inspect" the rooms "to make sure they have the standards," and the pain from her diagnosis inhibited her from doing any of these tasks. (ECF No. 21-3 at 77-78). In addition to imposing physical limitations, Plaintiff's pyelonephritis and its concordant symptoms

7

led her to "tak[e] a lot of days off," a cause for concern considering Defendant "need[ed a] manager to be there every day." (*Id.* at 81). On these accounts, Plaintiff testified that she believed she was terminated because her pyelonephritis barred her from doing her job the way she was being asked: "I was not able to performance [sic] my job, because I was really sick and I had a lot of pain." (*Id.*).

Viewing these facts presented in the light most favorable to Plaintiff, the Court concludes that she has adduced sufficient evidence from which a jury could reasonably conclude that there was a causal relationship between her disability and her termination. Plaintiff's PIP required her to regularly be at work, and because Plaintiff missed several days of work on account of her pyelonephritis, she in turn was fired for not meeting the requirements of her PIP. Although the record contains credible evidence that could support a contrary inference, which the Court discusses further below, these facts should be heard and determined by a factfinder.

### 2. Legitimate, Nondiscriminatory Reason

After the plaintiff has provided proof of their prima facie case, the burden shifts to the defendant to produce a justification for the adverse employment action. The defendant's burden at this stage is "relatively light" and is satisfied if the employer produces evidence, "which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). That is, "the defendant need not prove that the articulated reason actually motivated the action." *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003) (internal quotations omitted). Whether the defendant has met its burden of production is a determination for the court and "involves no assessment of credibility." *Johnson v. Women's Christian All.*, 76 F. Supp. 2d 582, 586 (E.D. Pa. 1999) (citation omitted).

According to Guzman, Plaintiff was placed on a PIP a few weeks after her hospitalization based on several of her colleagues informing management that they "had issues" with her leadership and performance. (ECF No. 21-4 at 21). The PIP "required Plaintiff to meet various performance standards and expectations over the next thirty days," and when Plaintiff failed to do so within that timeframe, she was fired. (ECF No. 21-1 at 20). The Court finds that this reason is plainly legitimate to justify Defendant's decision to terminate Plaintiff's employment. *See DeCicco v. Mid-Atl. Healthcare, LLC*, 275 F. Supp. 3d 546, 555-56 (E.D. Pa. 2017) (explaining that courts routinely accept a plaintiff's "failure to meet expected performance goals," "poor work performance," "unprofessional behavior," and "violation of internal company policies" as "facially legitimate" reasons justifying an adverse employment action, including termination) (citations omitted).

### 3. Pretext

Because Defendant has provided a legitimate, nondiscriminatory reason for terminating Plaintiff, the burden shifts back to Plaintiff to show that "the defendant's proffered reason is merely pretext for intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). To establish pretext, a plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). The non-moving plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [defendant's] proffered legitimate reasons for [its] action that a reasonable factfinder could rationally find them unworthy of credence, and . . . infer that [defendant] did not act for the asserted non-

discriminatory reasons." *Griffith v. PNC Bank*, No. 13-5407, 2015 U.S. LEXIS 65748, at *7 (D.N.J. May 20, 2015) (internal quotations marks and citation omitted).

To check these boxes, Plaintiff counters Defendant's argument with evidence that a jury may use to find pretext for discrimination. First, although Guzman testified that Defendant prepared Plaintiff's PIP around January 23, 2022 (the last day Plaintiff worked before testing positive for COVID-19), he conceded that he was not aware of any dated drafts of Plaintiff's PIP. (ECF No. 21-4 at 41). Additionally, despite Guzman's testimony that Defendant did not provide Plaintiff the PIP until February 25, because she took approximately two weeks of leave to recover from COVID-19, Plaintiff returned to work on February 4 and worked from then through February 7, providing Defendant a four-day window of opportunity to give Plaintiff her PIP. (ECF No. 21-3 at 65). After Plaintiff was later hospitalized for flank pain (and ultimately diagnosed with pyelonephritis) on February 8, she returned to work on February 16 and worked every day from then through February 25, giving Defendant another nine days to give Plaintiff the PIP. (*Id.* at 66-67; ECF No. 21-4 at 27-28). Nevertheless, Guzman testified that Defendant was "giving [Plaintiff] some time to adjust back to work" before giving her the PIP. (ECF No. 21-4 at 38). Upon the PIP finally being implemented, Guzman testified that he and Plaintiff had check-in meetings where they would "go over anything that she had questions with or anything that she needed to do to get back on track." (*Id.* at 39). However, there is no memorialization of what was discussed during these check-ins because Guzman neglected to "keep any notes or document the dates of them." (*Id.* at 41). The absence of any memorialization of these meetings requires a determination based on an assessment of the credibility of the testimony, and that must be done by a fact finder.

Based on the above, a jury may conclude that Plaintiff's disability was the motivating or determinative cause of Defendant's decision to terminate her. A jury could consider and determine that Defendant not administering the PIP until after Plaintiff reported her hospitalization, disability diagnosis, and accommodation request as evidence that Defendant had been engineering legal shelter to terminate Plaintiff for her disability. Alternatively, a jury may not deem that the reasonable conclusion. In either instance, a jury sitting as the finder of fact could only reach their conclusion after weighing the evidence and assessing the credibility of witnesses. This posture underscores that a true issue of material fact exists, making it inappropriate for the Court to grant a motion for summary judgment. As a result, Defendant's motion for summary judgment on Plaintiff's disability discrimination claim is denied.

### B. Retaliation

As an initial matter, "in view of the Court's finding on the ADA claim, there is no need for any specific finding of fact on the retaliation claim, as both claims are intertwined and if the one goes to trial, then Plaintiff can proceed on the other." *Penson v. Phila. Presbytery Homes, Inc.*, 2018 U.S. Dist. LEXIS 161611, at *6 (E.D. Pa. Sept. 21, 2018). However, in independently reviewing Plaintiff's retaliation claim, the Court finds that material facts exist that preclude summary judgment.

Similar to Plaintiff's discrimination claim, her retaliation claim adheres to the *McDonnell Douglas* framework and has overlapping elements. *See Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301-02 (3d Cir. 2012) (analyzing ADA retaliation claim pursuant to the *McDonnell Douglas* framework).

### 1. Prima Facie Case

In her Amended Complaint, Plaintiff alleges that Defendant retaliated against her "based upon her need to request leave from work for treatment of her disability." (ECF No. 6 at ¶ 65). To establish a prima facie case of disability-accommodation retaliation under the ADA, a plaintiff must show that (1): she engaged in a protected activity in the form of requesting a disability accommodation; (2) the employer subjected her to an adverse employment action; and (3) a causal connection exists between the protected activity and the challenged adverse action. *Ruggiero v. Mount Nittany Med. Ctr.*, 736 F. App'x 35, 41 (3d Cir. 2018). Here, Defendant concedes the first two elements of Plaintiff's retaliation claim and only challenges the final element — causation.

To demonstrate the third element of the prima facie case for her retaliation claim, Plaintiff must show a "causal link" between her accommodation request and her termination. *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007). Courts consider "a broad array of evidence" to determine causation, including (1) temporal proximity, (2) intervening antagonism or retaliatory animus, (3) inconsistencies in the employer's articulated reasons for terminating the employee, or (4) any other evidence in the record sufficient to support the inference of retaliatory animus. *Id.* (citations omitted).

The Court finds that Plaintiff has established a prima facie case of retaliation based on Defendant expressing antagonism toward Plaintiff two days before terminating her. During February and March of 2022, the Element had an undisputed shortage of housekeepers and, according to Guzman, "everyone had to pitch in." (ECF No. 21-4 at 28). On March 26, 2022 specifically, the last day Plaintiff worked before being terminated, all 110 rooms in the Element had to be cleaned, and despite twelve housekeepers being needed to reasonably complete the task, only three housekeepers were available. (ECF No. 21-3 at 95). Accordingly, Plaintiff

testified that Patricia Sankey ("Sankey") — another manager who had been made aware by Budding of Plaintiff's hospitalization and disability — "forced" her to clean a seemingly impossible number of rooms by herself, causing her pain and suffering due to her disability. (ECF No. 21-3 at 34, 69; ECF No. 21-4 at 22). To support her testimony, Plaintiff relies on Exhibit 1-B, a group chat thread from the day in question in which Sankey repeatedly communicated Defendant's need for available rooms. (ECF No. 22-3). In addition to telling Sankey herself that she was not "going to do some of her job because she was overwhelmed," Plaintiff called Guzman and Budding that evening to discuss the situation that had taken place with Sankey, but neither picked up or returned her call. (ECF No. 21-4 at 34; ECF No. 21-3 at 93-94). Thereafter, Plaintiff sent an email to all staff, including Guzman and Budding, writing that she was "not going to be able to come [to work] tomorrow" due to "being chased and harasse[d] from one of [her] coworkers." (*Id.* at 93). Neither Guzman nor Budding responded to Plaintiff's email. (*Id.*).

Based on the above, a jury may view Defendant, through Sankey, effectively mandating that an employee with a disability do the physically demanding job of four housekeepers in total, as knowingly setting her up to fail and therefore not meet the standards outlined in her PIP. Thus, the Court finds that a reasonable factfinder, considering the evidence as a whole, could conclude that Plaintiff's termination was causally connected to her request for a disability accommodation.

### 2. Pretext

Because the Court's pretext inquiry for retaliation claims is identical to the analysis for discrimination claims, *Lichtenstein*, 691 F.3d at 301-02, the Court relies on its pretext analysis of Plaintiff's discrimination claim above. As such, because there is a genuine dispute of material

fact as to whether Plaintiff was retaliated against for her request for accommodation, summary judgment is also denied as to Plaintiff's retaliation claim.

### C. Failure to Accommodate

Unlike discrimination and retaliation claims, district courts in this jurisdiction have generally declined to apply the *McDonnell Douglas* framework to failure to accommodate claims. *See, e.g., Schomer v. Westmoreland Cnty.*, 2022 U.S. Dist. LEXIS 209082, at *12 (W.D. Pa. Nov. 17, 2022), *report and recommendation adopted*, 2022 U.S. Dist. LEXIS 231394 (W.D. Pa. Dec. 23, 2022) (listing cases). The Third Circuit, it appears, has not directly addressed the issue of whether and to what extent failure to accommodate claims are subject to the *McDonnell Douglas* framework, but has affirmed a district court decision concluding that failure to accommodate claims under the ADA were not subject to the framework. *See Walton v. Mental Health Ass'n.*, 1997 U.S. Dist. LEXIS 18224, at *10 (E.D. Pa. Nov 17, 1997), *aff'd sub nom. Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661 (3d Cir. 1999).

The ADA defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). In other words, discrimination under the ADA "encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities." *Taylor*, 184 F.3d at 306.

Under the ADA, an employer has a "duty to engage, in good faith, in an 'interactive process' with the employee" as part of the accommodation process. *Reifer v. Colonial Intermediate Unit 20*, 462 F. Supp. 2d 621, 634 (M.D. Pa. 2006) (quoting *Williams v.*

14

*Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 771 (3d Cir. 2004)). To show Defendant failed to undertake the interactive process in good faith, Plaintiff must show that (1) Defendant knew about her disability, (2) she requested accommodations or assistance for her disability, (3) Defendant did not make a good faith effort to assist her in seeking accommodations, and (4) she could have been reasonably accommodated but for Defendant's lack of good faith. *Taylor*, 184 F.3d at 319-20.

In her Amended Complaint, Plaintiff alleges that her "request for leave for the March 17, 2022 surgery constitutes a request for a reasonable accommodation" and that Defendant "failed to make a good faith [effort] to engage in an interactive process and assist [her] by granting her leave." (ECF No. 6 at ¶¶ 69-70). However, in her response to Defendant's Motion, Plaintiff focuses her analysis on how "she was denied a reasonable accommodation in the form of light duty work and instead [was] required to clean rooms with no accommodation." (ECF No. 22 at 22). This new allegation is not fairly encompassed in the Amended Complaint and thus is not properly before the court. *See Diodato v. Wells Fargo Ins. Servs., USA, Inc.*, 44 F. Supp. 3d 541, 559 (M.D. Pa. 2014) ("It is well-settled that [a plaintiff] may not amend his complaint in his brief in opposition to a motion for summary judgment.") (quotation omitted); *Duran v. Merline*, 923 F. Supp. 2d 702, 723-24 (D.N.J. 2013) (summary judgment appropriate on access to courts claim when plaintiff attempted to cite two additional instances of misconduct in opposition brief which were absent from plaintiff's complaint); *Anderson v. Consol-Pennsylvania Coal Co.*, 740 F. Supp. 1126, 1130 (W.D. Pa. 1990) ("[W]e will not allow plaintiffs to expand their theory of the case at this late date in an effort to avoid summary judgment.").

Turning to the merits of Plaintiff's request for leave for her March 17, 2022 surgery, the Court finds that her failure to accommodate claim does not pass muster. Not only did Plaintiff

tell Budding that she was not going to have the surgery as scheduled on March 17, but she did not provide Budding with a rescheduled date for the surgery or ask Defendant for any time off in anticipation of the rescheduled surgery before her termination. (ECF No. 21-3 at 90). While a "leave of absence for medical treatment may constitute a reasonable accommodation under the ADA," *Bernhard v. Brown & Brown of Lehigh Valley, Inc.*, 720 F. Supp. 2d 694, 700 (E.D. Pa. 2010) (citation omitted), there is "nothing in the ADA [that] mandate[s] an employer to speculate as to the extent of [an employee's] disability or her need or desire for an accommodation simply because it is aware that she was ill." *Conneen v. MBNA America Bank, N.A.*, 182 F. Supp. 2d 370, 377 (D. Del. 2002) (citation omitted). Indeed, a request "must make clear that the employee wants assistance for his or her disability. In other words, the employer must know of both the disability and the employee's desire for accommodations for that disability." *Taylor*, 184 F.3d at 313. Because Plaintiff did not make a request for time off for her surgery after she decided not to undertake it on March 17, 2022, Defendant could not have engaged in the interactive process with her. Accordingly, summary judgment is granted in favor of Defendant on Plaintiff's failure to accommodate claim.

IV.     **Conclusion**

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted as to Plaintiff's failure to accommodate claim and denied as to Plaintiff's discrimination and retaliation claims. An appropriate order will follow.

BY THE COURT:

/s/ Kelley B. Hodge
_____
**HODGE, KELLEY B., J.**